**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------------X

ALEXANDRO ACOSTA, as a parent of M.A., a student at JHS 145;
GLADYS ALVAREZ, as a parent of B.A., a student at JHS 145;
NECHELLE ARMSTEAD, as a parent of S.A., a student at Urban
Science Academy; ANDREA ANTIGUA, as a parent of F.P., a student at
Urban Science Academy; SUSANA ARROYO, as a parent of S.A.,
a student at MS 328; ERIKA BATISTA, as a parent of V.P., a student at
JHS 145;VILMA BERNUDEZ, as a parent of C.T., a student at JHS 145;
APRIL BLACK, as a parent of I.L., a student at Urban Science Academy;
MARIANA BONIFACIO DE ORTIZ, as a parent of M.O., a student at
Urban Science Academy; SILVIA BRITO, as a parent of J.S., a student at
Urban Science Academy; CHANELLE BROWN, as a parent of A.A.,
a student at JHS 145; SANTIAGO CABRERA, as a parent of F.C. and
F.C., students at JHS 145; KARINA CADLE, as a parent of Z.R.,
a student at Urban Science Academy; CLAUDIA CARDOSO, as a parent
of A.M., a student at JHS 145; XIOMARA CASSO, as a parent of J.C.,
a student at JHS 145; ANA CASTILLO, as a parent of M.R., a student at
JHS 145; AMALFIS CERDA, as a parent of M.B., a student at Urban
Science Academy; MARITZA CHIRINO, as a parent of J.P., a student at
JHS 145; JUAN CONTRERAS, as a parent of W.C. and N.C., students at
JHS 145; SHARON CROSS, as a parent of T.M., a student at Urban
Science Academy; JOSE CRUZ, as a parent of J.C., a student at Urban
Science Academy; XENIA CRUZ, as a parent of E.C., a student at Urban
Science Academy; EDITH CUATTLE, as a parent of D.L., a student at
JHS 145; DANIEL ITESHA, as a parent of D.B. and D.B., students at
JHS 145; JAMEL DAVIS, as a parent of J.D. and M.D., students at MS
328; JESSIE DAVIS, as a parent of R.P., a student at JHS 145; TANYA
DEJESUS, as a parent of D.J., a student at JHS 145; LISSETTE DEL C
MEDINA, as a parent of N.T., a student at Urban Science Academy;
CARMEN DE LA CRUZ, as a parent of A.A., a student at JHS 145;
ZOILA DE LUNA, as a parent of D.P., a student at Urban Science
Academy; CEDRIC DEW JR, as a parent of E.L., a student at JHS 145;
MAGDALENA ESPINOZA, as a parent of G.M., a student at Urban
Science Academy;  ROSA FERMIN, as a parent of J.R., a student at JHS
145; MARIA FERMIN, as a parent of Z.F., a student at JHS 145;
GAFRATU FLATIOU, as a parent of Y.F. and H.F., students at Urban
Science Academy; ANTONIO FLORES, as a parent of C.C., a student at
JHS 145; NOMINATO FOFANA, as a parent of A.F., a student at JHS
145; RUBYATOU FOFANA, as a parent of M.F., a student at JHS 145;
MILEDY FRIAS, as a parent of A.F., a student at Urban Science
Academy; DANNY FUENTES, as a parent of A.F., a student at JHS 145;
CARMEN GARCES, as a parent of A.U., a student at JHS 145;
BEATRIZ GARCIA, as a parent of K.G., a student at Ms.328; SHARON

**15 Civ. 4587**


**CLASS ACTION**
**COMPLAINT**

GARDENHIRE, as a parent of G.G., a student at JHS 145; CARLOS
GONZALEZ, as a parent of C.G., a student at JHS 145; ISABELLE
GONZALEZ, as a parent of J.G., a student at JHS 145; JUDNA
GONZALEZ, as a parent of A.B., a student at JHS 145; MARIA
GONZALEZ DE ESPINAL, as a parent of Y.G., a student at JHS 145;
ROSANNA GRULLON, as a parent of J.D., a student at JHS 145;
MARINO GUABA, as a parent of M.G. and A.G., students at Urban
Science Academy; MARGARET GUADALUPE, as a parent of J.M.,
a student at JHS 145; LINDA GUERRIDO, as a parent of J.A., a student
at JHS 145; MIGUEL GUZMAN, as a parent of J.G., a student at Urban
Science Academy; LAUREEN HALL, as a parent of L.S., a student at
JHS 145; LYDIA HAMPTON, as a parent of L.A., a student at MS 328;
FREDDY HENRIQUEZ,  as a parent of J.H., a student at JHS 145;
JAVIER HERNANDEZ, as a parent of O.F., a student at Urban Science
Academy; STEPHANIE HERNANDEZ, as a parent of C.R., a student at
MS 328; JENNY HIDALGO, as a parent of E.H., a student at Urban
Science Academy; DJAMILATOU IDRISSOU, as a parent of S.G.,
a student at JHS 145; NICHOLAS JONES, as a parent of H.G., a student
at JHS 145; DOUSSOU KEITA, as a parent of S.K., a student at JHS
145; DAVID KELLY, as a parent of B.K., a student at JHS 145;
GLORIA KHAN, as a parent of T.K., a student at MS 328; KELLY
LANDSMAN,  as a parent of J.F., a student at JHS 145; MARIA
LEONARDO, as a parent of J.P., a student at JHS 145; LIANA
LIPEDUSI, as a parent of K.R., a student at JHS 145; SONIA LIZARDO,
as a parent of A.L., a student at JHS 145; CHANEL LORA, as a parent of
J.C., a student at JHS 145; ERICKSON LOPEZ, as a parent of J.P.,
a student at JHS 145; SANDRA LOPEZ, as a parent of I.L., a student at
JHS 145; FANY LUCERO, as a parent of Y.O., a student at JHS 145;
NEFTALI MALDONADO, as a parent of N.M., a student at JHS 145;
DEYSI MANCEBO, as a parent of N.B., a student at Urban Science
Academy; TAYSHA MANNERS, as a parent of T.M. and T.M., students
at JHS 145; CHIFFON MARSHALL, as a parent of L.B., a student at
JHS 145; CATALINA MARTINEZ, as a parent of J.S., a student at JHS
145; KEILYN MARTINEZ, as a parent of K.R., a student at JHS 145;
MARLENE MARTINEZ, as a parent of L.P., a student at JHS 145;
ROSANNA MARTINEZ, as a parent of A.R., a student at JHS 145;
WRILEY MCINNIS,  as a parent of M.I., a student at JHS 145;
YNELDA MEJIA DE VELASQUEZ,  as a parent of Y.V., a student at
JHS 145; DINA MENA, as a parent of D.B., a student at JHS 145;
FELICIANO MENDEZ, as a parent of C.M., a student at JHS 145;
GRACE MENSAH, as a parent of R.M. and R.M., students at Urban
Science Academy; GISSELL MIRANDA, as a parent of A.M. and M.M.,
students at JHS 145; LUDENNY MONTILLA RODRIGUEZ, as a parent
of S.R. and S.R., students at JHS 145; CARLOS MOSQUERA, as a
parent of D.M., a student at Urban Science Academy; DEVAUGHN
MORGAN, as a parent of N.M., a student at Urban Science Academy;

ROBERTO MUNOZ, as a parent of A.J., a student at JHS 145;
CAROLINA NUNEZ CEPEDA, as a parent of J.N., a student at JHS 145;
WANDALIS NUNEZ, as a parent of A.P., a student at MS 328;
MARGARITA OLMEDO, as a parent of R.O., a student at JHS 145;
LUCRECIA ORTIZ, as a parent of M.B. and Z.B., students at Urban
Science Academy; TERRY OUTLAW, as a parent of A.O., a student at
Urban Science Academy; ROBERTO PAULINO, as a parent of L.R.,
a student at Urban Science Academy; FLOR PAULINO, as a parent of
L.R., a student at Urban Science Academy; JUAN PEGUERO, as a
parent of I.P., a student at JHS 145; CARMEN PEREZ, as a parent of
K.M., a student at MS 328; DIANA B. PEREZ, as a parent of B.C.,
a student at JHS 145; FRANKLIN PEREZ, as a parent of L.P., a student
at JHS 145; YAHAIRA PEREZ DE CASTILLO, as a parent of S.P. and
R.P., students at JHS 145; MISAEL PORTILLO, as a parent of I.S.,
a student at Urban Science Academy; INEZ QUEZADA, as a parent of
L.Q., a student at Urban Science Academy; FLOR RAMIREZ, as a parent
of M.B. and M.O., students at Urban Science Academy; HERMINIA
REYES, as a parent of C.R., a student at JHS 145; BEATRICE
RICHARDSON, as a parent of B.K., a student at JHS 145;
JACQUELINE RIVERA, as a parent of J.P., a student at Urban Science
Academy; JOCELYN RODRIGUEZ, as a parent of L.R., a student at
Urban Science Academy; ROSIO RODRIGUEZ, as a parent of W.R.,
a student at JHS 145; YINAIRA RODRIGUEZ, as a parent of R.D. and
L.D., students at Urban Science Academy; CARMEN ROMERO, as a
parent of C.G. and J.G., students at JHS 145; ESPERANZA ROMERO,
as a parent of C.R., a student at Urban Science Academy; NIDIA
ROSARIO, as a parent of J.F., a student at JHS 145; MYRNA
SANCHEZ, as a parent of J.R., a student at JHS 145; ONEIDA
SANTOS, as a parent of O.S., a student at Urban Science Academy;
LUBERTHA SIMMONS, as a parent of A.G., a student at MS 328;
ALTAGRACIA SOSA, as a parent of A.A., a student at JHS 145;
LUSCRIDA SOTO, as a parent of A.P., a student at Urban Science
Academy; SAFIATOU SOUMAH, as a parent of B.M., a student at JHS
145; DIONADA SUAREZ, as a parent of T.S., a student at MS 328;
MARIA TAVERAS, as a parent of E.S., a student at MS 328;
OLOGARIO TEUTLE, as a parent of L.T., a student at JHS 145; DIGNO
TEJADA, as a parent of C.T., a student at Urban Science Academy;
LILIAN TEJEDA, as a parent of B.M., a student at JHS 145; RAMON
TORRES, as a parent of E.T., a student at JHS 145; FATOU
TOUNKARA, as a parent of N.D., a student at JHS 145; FATOUMATA
TOUNKARA, as a parent of M.F., a student at JHS 145; MAKALE
TOUNKARA, as a parent of D.K., a student at JHS 145; MOHAMMED
TOURAY, as a parent of S.T., a student at Urban Science Academy;
CRYSTAL TURNER, as a parent of D. Turner, a student at JHS 145;
NORMA VALERA, as a parent of M.S., a student at MS 328; SUSANA
VARGAS, as a parent of A.L. and T.L., students at JHS 145; ROBERT

VILLEGAS, as a parent of N.V., a student at JHS 145; ALBACELY
VILORIO DE REYES, as a parent of A.V., a student at Urban Science
Academy; RAYMUNDA VIVALDO, as a parent of A.D., a student at
JHS 145; MELODY WALKER, as a parent of N.W., a student at MS
328; HELLENNA WILLIAMS, as a parent of A.B., a student at JHS 145;
and GAIL WILSON, as a parent of M.O., a student at JHS 145;
individually and on behalf of a class of persons similarly situated,

**Plaintiffs,**

-against-

NEW YORK CITY BOARD OF EDUCATION,

**Defendant.**

-------------------------------------------------------------------------------------X

Plaintiffs, by their undersigned counsel, allege as and for their Complaint as follows:

**<u>INTRODUCTION</u>**

1.      The Individuals with Disabilities in Education Act (the "IDEA") is a federal law
enacted in 1990 designed to protect the rights of students with disabilities by ensuring that
everyone receives a "free, appropriate public education, regardless of ability."  The IDEA strives
to not only grant equal access to students with disabilities, but also to provide additional special
education services and procedural safeguards.

2.      Under the law, special education services are individualized to meet with the
unique needs of students with disabilities and are to be provided in the least restrictive
environment.  Special education may include individual or small-group instruction, curriculum
or teaching modifications, and assistive technology.  These services are provided in accordance
with an Individualized Education Program ("IEP"), which is specifically tailored to the unique
needs of each student.  Children between the ages of three and 21 are eligible for these services.

4

3.      In the instant case the New York City Board of Education (the "BOE") had determined to reduce the space utilized by three underperforming schools co-located in a school building in the Bronx, known as X145, a quarter of whose students have been identified as learning disabled.  This reduction was planned to make way for the co-location of an elementary grade charter school known as Success Academy Bronx 3.  Plaintiffs allege, in fact, that the BOE has not properly assessed the students at X145, although BOE data show approximately 25 percent of the students as having learning disabilities, in fact, the number, upon information and belief is closer to 50 percent.  The co-location was approved by the BOE without a proper assessment of its impact on students with IEPs and students without IEPs.

**JURISDICTION**

4.      This Court's jurisdiction is invoked pursuant to 28 USC §§ 1331 and 1343, 20 USC § 1415(i)(2)(A), and 28 USC § 2201.

**PARTIES**

5.      Plaintiffs named in the caption above are parents of students, each of whom is also named in the caption, who attend either Arturo Toscanini JHS 145 ("JHS 145"), Urban Science Academy ("Urban Science Academy"), New Millennium Business Academy Middle School ("New Millennium Academy") or Alternate Learning Center ("ALC MS 145"), schools located in the building known as X145. Twenty-five percent of Petitioners have children who have been found, by the NYC Board of Education, to have educational disabilities sufficient to warrant Individual Education Plans. JHS 145, Urban Science Academy, New Millennium Academy, and ALC MS 145 are co-located in the X145 Building ("X145") at 1000 Teller Avenue, Bronx, NY 10456.

6.      Defendant New York City Board of Education ("BOE") is the School Board, as that term is defined in the Education Law, for the New York City School District.  The Panel on Educational Policy ("PEP") is the BOE's policy-making body.  The BOE's central office is located at 52 Chambers Street, New York, New York.

## CLASS ACTION ALLEGATIONS

7.      a.      Plaintiffs Linda Guerrido, Itesha Daniel, Chanel Lora, Naminata Fofana, Nicholas Jones, Cedric Dew, Jr., Sonia Lizardo, Ludenny Montilla Rodriguez, Myrna Sanchez, Laureen Hall, Crystal Turner, Robert Villegas, Tanya Dejesus, Rosanna Grullon, Danny Fuentes, Djamilatou Idrissou, Carmen Garces, Chanelle Brown, Juan Dominguez, David Kelly, Beatrice Richardson, Neftali Maldonado, Erika Batista, Liana Lipedusi, Catalina Martinez, Xenia Cruz, April Black, Sharon Cross, Devaughn Morgan, Miledy Frias, Yinaira Rodriguez, Lydia Hampton, Gloria Khan, Antonio Flores, Fatou Tounkara, Maria Fermin, Margarita Olmedo, Franklin Perez, Rosio Rodriguez, Rosa Fermin, Altagracia Sosa, Fany Lucero, and Vilma Bermudez are parents of children with identified Special Education needs who attend classes in either JSH 145, Urban Science Academy, or MS 328, and represent a class of all parents of children at schools located in Building X145 who have been identified as needing IEPs.

b.      The remaining plaintiffs are parents of children who attend classes in JHS 145, Urban Science Academy, or MS 328 who have not been properly assessed for potential special educational needs, who represent a class of all parents of children at schools located in Building X145 who have not been properly assessed for special educational needs.

c.      Plaintiffs bring their causes of action on behalf of a class of similarly situated parents as described above;

i.      each class is so numerous that joinder of all members is impracticable;

ii.     there are questions of law or fact common to the class;

iii.    the claims or defenses of the representative parties are typical of the claims or defenses of their class;

iv.     the representative parties will fairly and adequately protect the interests of their class;

v.      inconsistent or varying adjudications with respect to individual members of each class would establish incompatible standards of conduct for the parties opposing the class;

vi.     adjudications with respect to individual members of each class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

vii.    the parties opposing the classes have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## **FACTS RELEVANT TO ALL CLAIMS**

### **Rights Under the Individuals with Educational Disabilities Act**

8.      In enacting the IDEA, Congress made the following findings at 20 USC §1400(c):

(5) Almost 30 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by

(A) having high expectations for such children and ensuring their access to the general education curriculum in the regular classroom, to the maximum extent possible.

7

(D) providing appropriate special education and related services, and aids and supports in the regular classroom, to such children, wherever appropriate.

(F) providing incentives for whole-school approaches.

(H) supporting the development and use of technology … to maximize accessibility for children with disabilities.

(6) Parents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways.

(12) Greater efforts are needed to prevent the intensification of problems connected with mislabeling and high dropout rates among minority students with disabilities.

9.    Congress has described the purpose of the IDEA as follows at 20 USC § 1400(d):

(d) Purposes

(1)(A) to ensure that all children with disabilities have available to them a free appropriate public education and related services designed to meet their unique needs and prepare them for further education.

10.    A student with a disability is defined in the statute, at § 1401(3)(A), as follows:

The term "child with a disability" means a child – (i) with mental retardation, hearing impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific leaning disabilities; and (ii) who, by reason thereof, needs special education and related services.

11.    "Classification" pursuant to the scheme set out at 20 USC §§ 1414 and 1415 is

not necessary.  At 20 USC § 1412(B), Congress provided that

Nothing in this chapter requires that children be classified by their disability so long as each child who has a disability listed in § 1401 … and who by reason of that disability needs special education and related services is regarded as a child with a disability under this subchapter.

12.    On March 6, 2015 the BOE issued notice of a proposed co-location of Success

into X145 in 2015-2016. See Exhibit A.  The notice stated that Success would open at the

8

beginning of the 2015-2016 school year with projected enrollment of 100-120 students in third

grade, and would add one grade each year until it serves grades three through five with 250-300

students by 2017-2018.  According to the notice, X145 currently serves 920 students and has the

capacity to hold 1,737 students.  Under the proposal, X145 would serve 1,070-1,280 students

during the 2017-2018 school year, a building utilization rate of 62-74% percent.  The Notice set

a public hearing for April 16, 2015.

13.     In conjunction with the Notice, the BOE issued a Building Utilization Plan

(Exhibit B) and an Education Impact Statement (Exhibit C).

14.     The April 16, 2015 public hearing took place as scheduled. Approximately 650

members of the public were present at this hearing, and 85 people spoke, including principals

and School Leadership Team members. A majority of the comments made at this hearing were

opposed to the proposal to co-locate Success into X145.

15.     The co-location of Success in X145 was narrowly approved by 7-5 vote by an

unusually divided PEP. Those who voted against the proposal cited concerns with co-locating a

charter school with three Renewal schools with high special education populations.

**X145**

16.     X145 was built in 1965, has 65 full-sized classrooms for allocation and has a

target capacity for 1,737 students. X145 currently serves as a middle school for students in

grades six through eight. X145 has one art room, one community room, one auditorium, one

cafeteria, one computer room, one gymnasium, one library, one nurse's office, and one

science lab.

17.     The BOE proposed to temporarily co-locate grades three through five of Success,

for three years, with JHS 145, Urban Science Academy, New Millennium Academy, and ALC

MS 145 in X145. After three years the BOE intends to re-evaluate this proposal to determine long-term siting location for Success. Co-location of Success into X145 will take over 14 full-size rooms, 1 half-size room, and 1 quarter-size room in the first, 2015-2016, school year.

18.      X145, and the schools housed in the building, JHS 145, Urban Science Academy, New Millennium Academy, and ALC MS 145, are located in Community School District 9. Success will enroll students from Community School District 8.

**Arturo Toscanini Junior High School 145**

19.      JHS 145 was founded in 1965 for middle school students placing a special emphasis on Creative Education and the Arts. It serves children in grades six through eight and has 368 children currently enrolled.

20.      JHS 145 offers "an academically rigorous and innovative program stressing high standards of performance, study and discipline. The Academy program emphasizes analytical thinking skills, communication skills, and independent research. All students participate in high performance based academic core concentrations in both Mathematics and Literacy through extended blocks of time."[1] In addition to these common core requirements, JHS 145 offers numerous performance arts classes and students participate in dramatic, vocal, dance, instrumental and choral performances to encourage and showcase intellectual and personal development.

21.      JHS 145 serves a large number of minority and low-income students, as well as English Language Learners ("ELL"): 99% of students at JHS 145 are Black or Hispanic, 79% of students are eligible for free or reduced price lunch and 33% of students are ELL.

---

[1] *See* Arturo Toscanini Junior High School 145, About Us, http://ms145.org (last visited May 29, 2015).

22.     Although the BOE currently only classifies 21% of JHS 145 students as "Special

Ed," the percentage who are students with disabilities under the Individuals with Disabilities

Education Act ("IDEA") is, upon information and belief, around 40-50%.  *See* 20 U.S.C.

§ 1412(a)(3)(B). Sixteen percent (16%) of students at JHS 145 receive Self-Contained ("SC")

special education services and Special Education Teacher Support Services ("SETSS") or

Integrated Co-Teaching Classes ("ICT"), and a full 25% of students receive individualized

education programs ("IEP"). Self-Contained special education classes are classes with specific

student/teacher/paraprofessional ratios. Integrated Co-Teaching classes ensure "that students

with disabilities are educated alongside age-appropriate peers in a general education setting . . .

[and] consist of one general education teacher and one special education teacher."[2] For Special

Education Teacher Support Services a student is either pulled out from class and taught in a

smaller class for a portion of the day, or a teacher may come into the classroom to work with the

student, or small group of students, during the regular session.[3]

23.     JHS 145 is part of the School Renewal Program. Renewal Schools are New York

City Public Schools that meet all three of the following criteria: "(1) Were Identified as Priority

or Focus Schools by the State Department of Education;[4] "(2) Demonstrated low academic

achievement for each of the three prior years (2012-2014);"[5] and, "(3) Scored "Proficient" or

below on their most recent quality review."[6] Rather than close these schools, the BOE committed

---

[2] NYC DOE 2014-2015 Preliminary Class Size Report Glossary, http://schools.nyc.gov/NR/rdonlyres/0FEE6EAE-85B5-42B6-9B8A-B6AC57AE6B26/0/Glossary_of_Terms_NYC_DOE_2015_ACS.pdf.

[3] Advocates for Children of New York, AFC's Guide to Special Education, April, 2013, http://www.advocatesforchildren.org/sites/default/files/library/guide_to_special_ed.pdf?pt=1.

[4] A priority school is one that is in the bottom 5% of schools statewide (*i.e.*, lowest-performing). A focus school is a school in the bottom 10% of progress in a subgroup of a priority school.

[5] For middle schools, these are schools in the bottom 25% in Math and ELA scores.

[6] *See* http://schools.nyc.gov/AboutUs/schools/RenewalSchool.

to work with these schools over the next three years to provide them with additional resources to transform them into well-performing schools.[7] This work will include $250,000 in additional funds to expand services to children.

**Urban Science Academy**

24.     Urban Science Academy was formed in 2004 when the former CJHS 145 was divided into three smaller schools. It serves children in grades six through eight in the Concourse, Melrose, and Morrisania neighborhoods in the South Bronx and has an enrollment of 331 students.

25.     Urban Science Academy's mission is "building academic excellence across all subjects."  The school offers a number of arts and athletic programs, "as well as expanded literacy enrichment and technology initiatives."[8]

26.     Urban Science Academy also serves a large number of low-income, and ELL students. 81% of students at Urban Science Academy are eligible for free or reduced price lunch and 37% of students are ELL.

27.     Although the BOE currently only classifies 21% of Urban Science Academy students as "Special Ed," the percentage who are students with disabilities under the IDEA is, upon information and belief, around 40-50%.  See 20 U.S.C. § 1412(a)(3)(B). 17% of students at JHS 145 receive SC special education services and SETSS or ICT classes, and 21% of students receive IEPs.

---

[7] *Id.*

[8] *See* Urban Science Academy, About Us, Overview,  http://schools.nyc.gov/SchoolPortals/09/X325/AboutUs/Overview/default.htm (last visited May 29, 2015).

28.     Urban Science Academy is part of the School Renewal Program, which means that the City of New York will be investing approximately $250,000 into the school to increase services beginning with the 2015-2016 school year.

**New Millennium Business Academy Middle School**

29.     New Millennium Academy serves students in grades six through eight. There are currently 176 students enrolled at this school, and enrollment by 2017-2018 is projected at about 180-210. New Millennium Academy is the smallest of the three middle schools located in X145 Building.

30.     New Millennium Academy offers SC special education classes, SETSS and English as a Second Language ("ESL") programs. New Millennium Academy offers several extra-curricular activities and clubs, including Drumming, Theater, Homework Help, and a Business/Entrepreneurship Program. Sports include baseball, basketball, track and field.

31.     The BOE classified the percentage of students with IEPs as 25%, the percentage of students who are ELLs is also 25%, and the percentage of students receiving SC special education services or ICT class services is 14%.  Upon information and belief, the percentage of students needing IEPs is between 40 and 50.

32.     New Millennium Academy admits students through a limited unscreened program that gives priority to students residing in the zone who sign in at an event, then to students residing in the zone, then to students and residents of Districts 9 and 10 who sign in at an event, then to students and residents of Districts 9 and 10.

33.     At the public hearing on April 16, 2015 Principal Bastian of New Millennium Academy expressed concerns that New Millennium Academy will lose space if the proposal is granted, as it previously lost space when ALC MS 145 co-located into X145 Building. These

concerns were similarly expressed by New Millennium Academy School Leadership Team

Members Laura Weiss, Michael Aufiero, Shanieka Muniz and Desi Washington. The remarks

can be found on line, at the DOE website annexed to the PEP's April 29, 2016 agenda.

34.     New Millennium Academy is part of the School Renewal Program, meaning that

it too will receive $250,000 during the next school year in order to expand services to children.

**Alternate Learning Center**

35.     ALC MS 145 provides an educational setting for students in grades six through

eight who are on Superintendent's suspension for up to 90 days. ALC MS 145 currently serves

45 students and uses three full-sized rooms.

**Current Utilization**

36.     Each school currently located within building X145 is part of the city's School

Renewal turnaround program whereby low-performing schools are given more resources to

improve their success. Some key elements of the School Renewal program, according to the New

York City Department of Education, are "deepened support from and for families and

community partners" and "extended learning time."

37.     Under the current plan to co-locate Success in X145, the same three schools that

are supposed to be crafting "improvement plans, and expanding instruction,"  will be required to

give up space and resources, undermining their ability to implement new Renewal programs and

services for students that require space and to offer their students extended learning time.

Additionally, surrendering space to students from another district undermines the School

Renewal program's requirement for to build community ties and support.

38.     As demonstrated in the BUP (Exhibit B), should the co-location go through, the

three middle schools currently inhabiting building X145 will have to give up 14 full-size rooms,

a number which will grow as grades are added to Success. Currently JHS 145 uses 27 full size classrooms, Urban Success Academy uses 19 full-size classes, New Millennium uses 15 full-size classrooms, and ALC MS 145 uses 3 full-size classrooms, which account for 64 of the 65 full-size classrooms available for use in X145.  J.H.S 145 alone will be required to give up nine classrooms, a third of it's current space, space which is necessary for all of the schools in X145 to provide legally required services under the IDEA to the high number of children with special education needs. In addition, shared facilities such as the gymnasium will be stretched even thinner.

39.     **Although the EIS states that the building is under-utilized, based on student capacity and enrollment, ALL rooms in X145 are actually in use by JHS 145, Urban Science Academy, New Millennium Academy, and ALC MS 145 for instructional purposes, including the provision of programs connected with students' IEPs and with the ELL teaching program.** Available for allocation in X145 are 65 full sized rooms, 19 half-sized rooms, and 3 quarter sized rooms. Currently in use are 64 full sized rooms, 19 half-sized rooms, and 3 quarter sized rooms. Due to the high number of special education and ELL students at each of these middle schools, each school requires additional rooms to meet those students IEP needs.

40.     **At both the Public Hearing and at the PEP, representatives from all three schools, including their principals, demonstrated to the PEP/BOE that the co-location proposal would undermine each school's ability to implement new services and initiatives as part of the Renewal program. For example, space needed to implement plans for job-embedded professional development, academic support services, including small group and targeted classrooms, comprehensive health care services, and arts enrichment will be taken away from the schools as a result of the co-location with Success.**

**The EIS and Co-Location Plan Are Inadequate Under the State Education Law**

41.     The EIS and BUP only give pro-forma lip service to the ability of JHS 145, Urban
Science Academy, and New Millennium Academy:

        b.     to carry out their programs, and

        c.     to provide ongoing legally required services to students with disabilities –
the 25% of students currently inhabiting the building whose needs are addressed by one of the
three schools' individually based programs.

        d.     to provide ongoing legally required services to students recognized as
English Language Learners.

42.     By failing to use any language other than general assurances that the three schools
already in residence will be able to carry out its programs, the EIS violated § 2853(a-3)(2) and
§ 2592-h(2-b)(i), (ii), and (vii).  The EIS/BUP not only fails to address specifically how the three
schools will be able to pursue their plans for increased services to students as part of the Renewal
program with diminishing building space, it provides no detail at all about how a fully populated
Success, with one group of K-5 children and larger groups of middle school age children, will
function.  The document leads to no other conclusion but that the three Renewal schools
currently inhabiting X145 will be severely impacted in a way that will undermine their ability to
provide an adequate education for their students, particularly to those needing IEPs.

43.     The aforestated facts are incorporated by reference into the Causes of Action set
forth below.

44.     Plaintiffs have initiated appropriate remedies by presenting a complaint to the
local and state education agencies. A verified petition was served on the New York City Board

16

of Education on May 29, 2015, and filed with the New York State Education Department on June 1, 2015. Plaintiffs are proceeding herein due to the irreparable nature of the injury.

## AS AND FOR A FIRST CAUSE OF ACTION

45.     By failing to fully assess, in advance, the impact of the proposed co-location of Bronx Success Academy 3 on the students at X145 who are learning disabled, the BOE has violated the guarantees of 20 USC § 1400(d)(1)(A) that the students with disabilities at BAHS will have available to them a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living," and have failed to "ensure that the rights of children with disabilities are protected."

## AS AND FOR A SECOND CAUSE OF ACTION

46.     Pursuant to 20 USC § 1412, the State of New York, as a recipient of IDEA funds, has developed policies guaranteeing students with disabilities a "free appropriate education," with an IEP developed, reviewed, and revised for each child in accordance with 20 USC § 1414(d).

47.     By acting as aforedescribed, the BOE has breached its obligation under 20 USC § 1413 to maintain policies that are consistent with New York State policy.

## AS AND FOR A THIRD CAUSE OF ACTION

48.     Should Bronx Success Academy 3 be hosted in the building X145, the IEPs of disabled students at X145 will have been modified without proceeding through the process required by 20 USC § 1415.

17

## DAMAGES

49.     Plaintiffs, and those on behalf of whom they sue, will be irreparably injured, by loss of educational opportunities, unless the plan to co-locate a charter school into the BAHS building is restrained.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.     Enter a preliminary and permanent injunction enjoining the co-location of Bronx Success Academy 3 building X145.

2.     Enter a declaratory judgment that the co-location of a school into a building with a large percentage of learning disabled students requires the development and issuance of new IEPs prior to approval of the co-location, in accordance with 20 USC § 1415.

3.     Enter judgment awarding plaintiffs costs and attorneys' fees.


Dated: June 5, 2015


                              ADVOCATES FOR JUSTICE
                              Attorneys for Plaintiffs


                              By:_____/s/_____
                                     Arthur Z. Schwartz (AZS 2683)
                              225 Broadway, Suite 1902
                              New York, New York  10007
                              212-285-1400